**SIXTH DIVISION**
December 10, 2010

No. 1-09-2840

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 17933 |
| | ) | |
| EMMERITT ADAIR, | ) | The Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the opinion of the court.

Following a jury trial, the defendant was convicted of two counts of possession of a controlled substance and sentenced to seven years' imprisonment. The defendant contends the evidence was insufficient to prove he possessed at least 15 but less than 200 pills of methylenedioxymethamphetamine (MDMA or ecstacy) and at least 5 but less than 15 grams of methamphetamine, where the forensic chemist commingled each pill and powder before testing for the presence of each controlled substance. The defendant also challenges the imposition of certain fees and fines, contending some should be offset by the daily $5 presentencing custody credit he earned.

We reduce the defendant's convictions to the lowest class for each offense; the State failed to prove the essential elements of quantity of MDMA pills and weight of methamphetamine because the testing method employed by the chemist rendered her

quantity and weight findings speculative.  We affirm the imposition of the $200 DNA analysis fee and the $25 court services fee, but vacate the $5 court system fee.  Based on his days in presentencing custody, the defendant is entitled to $1,970 credit against all fines (but not fees) imposed.  We remand for a new sentencing hearing.

BACKGROUND

The defendant was arrested with a bag containing suspected narcotics in the form of 24 pills and some loose powder according to the arresting officer.  The defendant was indicted on two counts: one count of possession with intent to deliver more than 15 but less than 200 pills of MDMA, and one count of possession with intent to deliver at least 5 but less than 15 grams of a substance containing methamphetamine, based on the crime lab results.  A jury found the defendant not guilty of intent to deliver, but guilty of possession of each controlled substance in the quantity and weight charged in the indictment.  He was sentenced to seven years' imprisonment.

Chicago police officer Thomas Krob testified that on August 29, 2008, at approximately 10:30 p.m., while on patrol in a marked squad car with his partner, Officer Phil Schulter, he observed a 1991 blue Buick Regal being driven on Roosevelt Road in Chicago without headlights.  The officers conducted a traffic stop of the vehicle at a gas station located at Roosevelt and Independence.  Officer Krob approached the driver's side of the

No. 1-09-2840

Buick. The defendant was behind the steering wheel. When Officer Krob asked the defendant for his driver's license and insurance, he replied he had neither. The defendant was told to exit the vehicle. When he exited, Officer Krob observed a clear plastic bag containing multicolored pills fall to the ground from the defendant's lap. Officer Krob recovered the bag and handed it to his partner. The defendant was taken into custody for the traffic offenses. Officer Krob testified that after being advised of his Miranda rights, the defendant admitted he paid $175 for 25 pills near the 5400 block of West Congress. The defendant told Officer Krob he planned to host a house party with the pills in Palos Heights.

Officer Schulter inventoried the bag of pills under inventory number 11415252; the bag was sealed and sent to the forensic services division of the Illinois State Police. Officer Schulter testified he never took the pills out of the bag, but manipulated the pills in the bag to count them. He testified he counted 24 pills and observed a small amount of powder.

In a motion in limine, defense counsel challenged the forensic evidence regarding the pills. According to the motion, the State sought to introduce, as evidence of the controlled substances, the weight and quantity of untested pills as well as those tested. Defense counsel argued that to link untested pills to tested pills, all pills had to be homogeneous. The pills, however, were of different colors, bearing different markings.

3

No. 1-09-2840

The court denied defense counsel's motion.

Amanda Shanbaum, a forensic scientist with the Illinois State Police, testified as an expert witness that she analyzed the pills and powder recovered from the defendant for the presence of a controlled substance. She received a knotted plastic bag with inventory number 11415252. She cut the bag open and placed the contents on a clean plastic weigh dish. She observed 21 pills, 3 pill fragments, and some powder. Ms. Shanbaum testified that the bag contained red and orange powder and pills and fragments of five different colors: three yellow pills with a "win" imprint; four lavender pills with a logo of a dancing man; six orange pills with a "win" imprint and two orange pills shaped like the Superman logo; four red pills with an unclear imprint, two red pills shaped like the Superman logo and a red pill chunk; and two chunks of green pills with a red crust.

Ms. Shanbaum testified that all of the pills were soft and crumbled when touched. She testified that as they crumbled, powder from all of the pills mixed together. She explained that all of the pills were touching each other and that they were all covered in powder. Ms. Shanbaum testified the pills, pill fragments, and powder collectively weighed 6.3 grams. She completed a crime lab discrepancy form because the bag contained 21 pills and 3 pill fragments, rather than 24 pills as listed on the inventory sheet.

Ms. Shanbaum testified she performed four preliminary tests

4

No. 1-09-2840

on the contents of the bag to confirm the presence of a narcotic. The first three tests indicated the presence of a hallucinogen and the final test indicated the presence of methamphetamine. Ms. Shanbaum testified that her next step was to create a "representative sample" of the contents of the bag upon which to perform conclusive tests. To get a representative sample, Ms. Shanbaum poked each pill with a glass tip and added the resulting powder to a gathering dish, along with some of the powder from the bag. Ms. Shanbaum testified she believed she tested each pill because a portion of each pill was crumbled into the representative sample mix from which she took the smaller testing sample. She testified she was not able to distinguish the powder of one pill from the powder of any other.

Ms. Shanbaum next performed a gas chromatography flame ionization detection test on the representative test sample, which indicated the presence of methamphetamine and MDMA. She then performed the gas chromatography mass spectrometry test, which confirmed that both methamphetamine and MDMA were present in the representative test sample. Based on the results of these tests, Ms. Shanbaum opined that the 21 pills, 3 pill fragments, and powder weighed 6.3 grams and contained MDMA and methamphetamine.

Following Ms. Shanbaum's testimony, the State rested. Defense counsel moved for a directed finding, contending insufficient proof of the charged offenses was offered on the

5

respective element of weight and quantity. Specifically, counsel argued the State failed to prove the defendant possessed 15 or more pills of MDMA because it was unknown how many pills actually contained MDMA given that the tests were performed on the representative sample, which contained powder from the various nonhomogeneous pills. Counsel further argued there was insufficient evidence of intent to deliver. The motion was denied.

The jury found the defendant not guilty of possession with intent, but guilty of straight possession of at least 15 but less than 200 pills of MDMA, and of at least 5 but less than 15 grams of methamphetamine.

In the motion for a new trial, the defense counsel challenged the trial court's ruling on his motion in limine. Defense counsel argued Ms. Shanbaum improperly mixed the pills into one representative sample. Defense counsel contended that Ms. Shanbaum should have tested each of the different types of pills independently to determine whether each identifiable group contained MDMA and methamphetamine. Defense counsel also argued it was error, based on the faulty representative sample, to allow Ms. Shanbaum to testify that the total weight of the bag's contents of 6.3 grams supported the weight element on the methamphetamine count. The trial court denied the motion.

The defendant was sentenced to concurrent seven-year prison

No. 1-09-2840

terms on the two counts.  In addition, the court imposed a monetary penalty of $1,660, which included a $200 DNA analysis fee (730 ILCS 5/5-4-3 (West 2008)), a $25 court services fee (55 ILCS 5/5-1103 (West 2008)), and a $5 court system charge (55 ILCS 5/5-1101(a) (West 2008)).  The defendant timely appeals his convictions and the imposition of these monetary penalties.

ANALYSIS

Sufficiency of the Evidence

The defendant does not challenge the sufficiency of the evidence establishing that he unlawfully possessed pills and powder containing two controlled substances, MDMA and methamphetamine.  However, the defendant contends the State failed to prove that he possessed at least 15 pills containing MDMA and at least 5 grams of methamphetamine, where the forensic chemist commingled the nonhomogeneous pills before testing for each controlled substance.  The defendant contends that based on the insufficiency of the evidence of the quantity and weight of the two controlled substances, his convictions must be reduced to lesser offenses, citing People v. Clinton, 397 Ill. App. 3d 215, 922 N.E.2d 1118 (2009).

In a challenge to the sufficiency of evidence, a reviewing court will not substitute its judgment for that of the trier of fact or reverse a conviction if any rational trier of fact could have reached the same conclusion based on the evidence viewed in

7

No. 1-09-2840

the light most favorable to the prosecution. People v. Ortiz,
196 Ill. 2d 236, 259, 752 N.E.2d 410 (2001). While great
deference is accorded to the findings of a trier of fact, a
criminal conviction cannot stand if the evidence is so improbable
or unsatisfactory as to give rise to reasonable doubt regarding
an essential element of the offense the defendant has been found
guilty of committing. Clinton, 397 Ill. App. 3d at 222.

To convict on the charge of unlawful possession of a
controlled substance, the State must prove beyond a reasonable
doubt that the substance recovered contains a controlled
substance. People v. Hagberg, 192 Ill. 2d 29, 34, 733 N.E.2d
1271 (2000). The charging instrument dictates when the quantity
or weight of the controlled substance underlying the charged
offense is an essential element to be proved beyond a reasonable
doubt. "When a defendant is charged with possession of a
specific amount of an illegal drug with intent to deliver and
there is a lesser included offense of possession of a smaller
amount, then the weight of the seized drug is an essential
element of the crime and must be proved beyond a reasonable
doubt." People v. Jones, 174 Ill. 2d 427, 428-29, 675 N.E.2d 99
(1996).

A forensic chemist is generally not required to test all of
the suspected narcotic substance to opine that the recovered
substance as a whole contains narcotics. Jones, 174 Ill. 2d at
429. "[R]andom testing is permissible when the seized samples

8

are sufficiently homogeneous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested." Jones, 174 Ill. 2d at 429.

In Jones, our supreme court answered whether the weight element was proved beyond a reasonable doubt when the weight of three packets, not tested for the presence of the controlled substance, was added to the weight of the two tested packets. Jones, 174 Ill. 2d at 430. The substance in each of the seized packets was unquestionably similar in appearance. Jones, 174 Ill. 2d at 429 (each of the five packets contained a white rocky substance). Nonetheless, the supreme court held that the chemist was required to "test a sufficient number of packets to prove beyond a reasonable doubt that defendant possessed one gram or more of cocaine." Jones, 174 Ill. 2d at 430. In other words, though a sample of each of the two packets tested positive for cocaine to support an inference beyond a reasonable doubt that each of the two packets as a whole contained cocaine, the inference could not be drawn that the three untested packets contained cocaine to permit the weight of the untested three packets to be added to the weight of the tested packets to meet the weight element of the charged offense. Jones, 174 Ill. 2d at 430.

In so ruling, the Jones court contrasted the recovered packets with a recovered substance that is sufficiently

9

homogeneous: "the five packets [in this case] containing loose substances cannot be equated with identically marked and stamped tablets, pills, or capsules." Jones, 174 Ill. 2d at 430. The court discussed People v. Kaludis, 146 Ill. App. 3d 888, 891-92, 497 N.E.2d 360 (1986), to reinforce this point. In Kaludis "a forensic chemist visually examined 100 tablets and determined that they had identical marking, lettering characteristics, bevelling, and scoring," which permitted the testing of three tablets to conclusively establish the presence of a controlled substance in all 100 tablets. Jones, 174 Ill. 2d at 429. Thus, a positive test of a random sample gives rise to an inference that all of the recovered pills or tablets contain the controlled substance only when the pills or tablets are sufficiently homogeneous. By the same token, when the seized samples are not sufficiently homogeneous, testing must be done on each distinct sample. "[W]hen such samples are not sufficiently homogeneous, a portion from each container or sample must be tested in order to determine the contents of each container or sample." Jones, 174 Ill. 2d at 429. This requirement means that each container or sample must be tested independently to conclusively determine that the contents of that container or sample contains a controlled substance.

The charges here stemmed from the defendant's possession of a bag of powder and pills of various colors with different markings. In testing these pills for the presence of an illegal

substance, the forensic chemist placed all of the pills and powder into a weigh dish and found the seized substance weighed 6.3 grams.  The chemist then crumbled portions of each individual pill and fragment into a representative sample dish, which also contained a portion of the loose powder.  From this representative sample, a smaller sample was tested for the presence of each controlled substance.  The representative sample tested positive for the presence of MDMA and methamphetamine. Based on this testing method, the chemist opined that at least 15 pills contained MDMA and at least 5 grams of the seized substance contained methamphetamine.

It is evident that the pills in the bag seized from the defendant were not identically marked, stamped, or even of the same color.  On the contrary, the chemist testified that the 21 pills and 3 pill fragments were of five different colors: three yellow pills; four lavender pills; eight orange pills; six red pills; and two green pill chunks.  Based on the visible appearance of the pills, there is no credible contention that the pills were sufficiently homogeneous to permit random sampling. Jones, 174 Ill. 2d at 429 ("random testing is permissible when the seized samples are sufficiently homogeneous").

The chemist here, however, did not rely on random sampling to test for the controlled substances in this case.  The chemist testified that she believed she tested all 21 pills and 3 pill fragments for the presence of the controlled substances by adding

powder from each into the representative sample dish, along with some of the loose powder in the bag.

The defendant argues that based on test results on the single representative sample for testing purposes, the chemist's opinion that at least 15 pills contained MDMA is speculative. Relying on the same reasoning, the defendant contends that the cumulative weight of the bag's contents is insufficient evidence to prove beyond a reasonable doubt that a sufficient number of pills in the recovered bag contained methamphetamine to meet the five-gram threshold. We agree.

According to the defendant's statement, he purchased 25 pills the night of his arrest. According to the inventory sheet he completed, the officer was able to observe only 24 pills, along with a small amount of powder. By the time the chemist received the inventoried bag, she observed 21 pills, 3 pill fragments, and some powder. The chemist described the pills as crumbling easily when touched.

In accordance with Jones and Clinton, the chemist here was required to test the seized pills by a method that would produce an evidentiary finding as to the number of pills that contained each controlled substance to meet the quantity and weight elements of the charged offenses beyond a reasonable doubt. Jones, 174 Ill. 2d at 429 ("when such samples are not sufficiently homogeneous, a portion from each container or sample

12

No. 1-09-2840

must be tested in order to determine the contents of each container or sample"); Clinton, 397 Ill. App. 3d at 223 (chemist improperly "combined six packets of suspected heroin before determining whether each of the packets did, in fact, contain heroin"). While the chemist testified that in her experience, MDMA and methamphetamine were often found in the same pill, she did not testify that she found both controlled substances in any one pill in this case. Rather, the chemist testified that she believed she properly tested all 21 pills and 3 fragments for the presence of the controlled substances in a single "representative" sample. The chemist was mistaken in her reasoning. Clinton, 397 Ill. App. 3d at 222 (the chemist erred in combining the contents of packets before testing each for the presence of heroin).

The representative sample the chemist used to test for the presence of each controlled substance was over-inclusive. To illustrate the fault in the sampling method, the State cannot tell us whether all orange pills contained both MDMA and methamphetamine. The same, of course, can be said of each of the other four colors of pills and fragments.

We need not be chemists to deduce that had all eight orange pills contained both MDMA and methamphetamine, the powder from each orange pill added to the representative sample would cause the test sample to test positive for both MDMA and methamphetamine, even if all the other pills contained inert

13

substances.  See Clinton, 397 Ill. App. 3d at 223 (we "cannot speculate that each of the packets [commingled into a single sample for testing] contained heroin").  This result explains the rule in Jones: When distinct samples are seized, a representative sample of each distinct sample must be tested to conclusively determine the chemical composition of that sample.  Jones, 174 Ill. 2d at 429 ("a portion from each *** [nonhomogeneous] sample must be tested in order to determine the contents of each *** sample").  Given the five colors of pills in this case, at the very least each color grouping of pills had to be treated as a separate sample and tested independently for the presence of each controlled substance.  Jones, 174 Ill. 2d at 429; Clinton, 397 Ill. App. 3d at 222.

Though it may be true that MDMA and methamphetamine were present in all five of the different colored pills, as our supreme court recognized, the ease with which such a conclusion can be drawn is no substitute for "a finding *** based on [the] evidence."  Jones, 174 Ill. 2d at 430.  Without evidence that all the pills had a similar chemical composition, a single representative sample cannot give rise to a finding that all the nonhomogeneous pills in this case contained both substances.  Such a finding is based on nothing more than guess, speculation, and conjecture.  Jones, 174 Ill. 2d at 430.

Recognizing that the pills could not be treated as if they were sufficiently homogeneous, the State contends that the

14

No. 1-09-2840

defendant, by possessing the pills in a single bag, "commingled" the pills to permit the chemist to rely on a single representative sample for testing purposes. The State notes it was the defendant, "not the police, [that] dumped all of the narcotics together into one bag." (Emphasis in original.) Premised on this indisputable observation, the State claims the hypothetical in People v. Coleman, 391 Ill. App. 3d 963, 971, 909 N.E.2d 952 (2009), dictates the outcome here rather than the reasoning in Jones and Clinton. In Coleman, the court noted that had the defendant "dumped" 900 grams of baking soda into a bag containing 15 grams of a substance containing cocaine, "the two substances would become one substance" so that the defendant would be chargeable with 915 grams of a substance containing cocaine. Coleman, 391 Ill. App. 3d at 972-73.

The State's comparison of the multicolored pills in this case to the Coleman example of cocaine and baking soda does not hold up. Cocaine and baking soda have appearances that are visually indistinguishable; the pills in this case were different to the naked eye. Each color grouping of pills required independent testing to conclusively establish the chemical composition of those pills no less so than packets containing a similar white rocky substance must be separately tested to establish that each contains cocaine. Jones, 174 Ill. 2d at 429 (a sufficient number of packets containing a white rocky substance were required to be tested).

15

There is no authority for the State's contention that its burden to demonstrate the number of pills that contained MDMA and to prove the weight of the pills that contained methamphetamine was lifted simply because the defendant "dumped" 24 or 25 pills into a single bag. See Jones, 174 Ill. 2d at 430 (with the untested packets in its possession, the State was in the best position to answer whether those packets "contained cocaine or mere look-alike substances"). That the State's claim is disingenuous can be further demonstrated by a Coleman-like example: Had the defendant, before he was arrested, placed similarly colored pills into separate bags, the prosecution would not have treated the contents of the five bags as separate offenses if all the pills had independently tested positive for both MDMA and methamphetamine. We add, nor should it.

Nor does the State's use of "commingled" fit the common understanding of the word. Commingling is the combining of different substances such that the original substances can no longer be distinguished, much as in the example in Coleman regarding cocaine and baking powder. Coleman, 391 Ill. App. 3d at 972-73 (when dumped together, baking soda and cocaine "become one substance"). To support its "commingling" contention, the State observes in its brief "that all of the pills were covered in a red powder," according to the testimony of the chemist. The State argues that all of the pills "having upon them" this red powder (quoting 720 ILCS 570/402(a)(7.5)(A) (West 2006)), "the

16

red powder on the pills also qualifies defendant for conviction for the possession of the full weight of the pills."

If that was the State's theory, all it needed to do was to have the chemist test this "red powder" to confirm that it contained both MDMA and methamphetamine. Because it did not do so, we decline the State's invitation to speculate that the "red powder" was a controlled substance.

Finally, commingling did occur here. The chemist testified that the powder she took from each of the pills and fragments to add to the representative sample was indistinguishable from the powder already in the mix. The commingling of distinct pills was done by the chemist, not the defendant.

We reject the State's claim that the defendant "commingled" the pills to permit a single representative sample for testing purposes.

In this case, the single sampling method used by the chemist does not support an evidentiary finding beyond a reasonable doubt that each of the pills and fragments the defendant possessed contained the two controlled substances. The representative sample created by the chemist by mixing powder from each of the 21 pills, 3 fragments, and powder cannot give rise to a credible finding that at least 15 pills contained MDMA or that at least 5 grams of the 6.3 grams of the seized samples contained methamphetamine as charged in the indictment. Pursuant to

17

No. 1-09-2840

Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), we reduce the defendant's convictions to the lowest class for each offense.  See 720 ILCS 570/402(c) (West 2008) (possession of less than 15 MDMA pills is a Class 4 felony); 720 ILCS 646/60(b)(1) (West 2008) (possession of less than five grams of methamphetamine is a Class 3 felony).

## Monetary Penalties

The defendant next contends the trial court improperly assessed certain fees, and the fines imposed should be offset by his presentencing custody credit.  Whether fines and fees are properly imposed raises a question of statutory interpretation, subject to de novo review.  In re Estate of Dierkes, 191 Ill. 2d 326, 330, 730 N.E.2d 1101, 1103 (2000).

### *$200 DNA Analysis Fee*

The defendant contends the trial court erred in assessing the $200 DNA analysis fee (730 ILCS 5/5-4-3 (West 2008)) because he was assessed this same fee in a prior conviction.

Section 5-4-3(j) of the Unified Code of Corrections mandates that following a qualifying felony conviction, a $200 DNA analysis fee be assessed against a defendant.  730 ILCS 5/5-4-3(j) (West 2008).  The DNA "fees *** collected by the clerk of the court [are] forwarded to the State Offender DNA Identification System Fund for deposit."  730 ILCS 5/5-4-3(k)(2) (West 2008).

18

No. 1-09-2840

The defendant argues that because his DNA is already on file with the Illinois State Police, he should not be subject to the DNA analysis fee, relying on our recent decision in People v. Evangelista, 393 Ill. App. 3d 395, 399, 912 N.E.2d 1242 (2009) (vacating the DNA fee imposed on a defendant with a prior conviction because once "a defendant has submitted a DNA sample, requiring additional samples would serve no purpose").

The State responds that there is nothing in the record to support the defendant's claim that he was previously assessed the $200 analysis fee or that he actually paid it. The State urges that any doubts arising from the record's incompleteness be resolved against the defendant, citing People v. Lopez, 229 Ill. 2d 322, 344, 892 N.E.2d 1047 (2008).

We prefer to address the defendant's claim directly. There are decisions in this district contrary to the holding in Evangelista. See People v. Hubbard, No. 1-09-0346, slip op. at 3-5 (September 17, 2010); People v. Grayer, No. 1-09-0021, slip op. at 7 (August 24, 2010); People v. Marshall, 402 Ill. App. 3d 1080, 931 N.E.2d 1271 (2010). In disagreeing with Evangelista, these decisions note that the statute does not expressly require a fee for every felony conviction, but the statute also does not expressly preclude multiple DNA fees following a conviction in separate cases. See, e.g., Grayer, slip op. at 6 ("nothing in the statutory language limits the taking of DNA samples or the assessment of the analysis fee to a single instance").

19

No. 1-09-2840

We add to the observations in the decisions upholding multiple DNA fees that the collected fees may be used to cover a variety of costs incurred by the State crime laboratory beyond "analysis and categorization into genetic marker grouping." 730 ILCS 5/5-4-3(j) (West 2008). One such example is that the fees may be used to cover "Costs incurred in the purchase and maintenance of equipment for the use in performing analysis." 730 ILCS 5/5-4-3(k)(3)(C) (West 2008). Because the fund into which the DNA analysis fee is deposited is available to cover a variety of costs, we cannot agree that multiple fee assessments "would serve no purpose" as the court suggested in Evangelista, 393 Ill. App. 3d at 399.

The DNA fee was properly assessed against the defendant, even if his assertion is correct that this is the second time he has been charged this fee.

*$25 Court Services Fee*

The defendant contends the trial court erred in assessing the $25 court services fee. 55 ILCS 5/5-1103 (West 2008). Section 5-1103 of the Counties Code expressly provides that the purpose of this fee is to defray "court security expenses incurred by the sheriff in providing court services." 55 ILCS 5/5-1103 (West 2008). The section provides that in criminal cases, and cases involving ordinance, traffic, and conservation violations, the court services fee will be assessed upon a finding of guilt. The fee is also assessed when dispositions

20

short of a judgment are entered, including supervision and probation without entry of a judgment. By its express language, the court services fee applies as well to all civil litigants. "Such fee shall be paid in civil cases by each party at the time the filing of the first pleading, paper or other appearance." 55 ILCS 5/5-1103 (West 2008).

Our primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. MidAmerica Bank, FSB v. Charter One Bank, FSB, 232 Ill. 2d 560, 565, 905 N.E.2d 839 (2009). The intent of the legislature is best determined from the language of the statute itself, read as a whole and given its plain and ordinary meaning. People v. Santiago, 236 Ill. 2d 417, 428, 925 N.E.2d 1122 (2010). We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the legislature's expressed intent. People v. Martinez, 184 Ill. 2d 547, 550, 705 N.E.2d 65 (1998).

Based on the encompassing language of the statute and its clear purpose of defraying court security expenses, we are unpersuaded that the failure to list the offenses the defendant committed means he cannot be required to defray the expenses incurred by the sheriff for his court proceedings. We reject the defendant's reading of the statute as authorizing a court services fee only for a conviction involving the single section of the Criminal Code of 1961 listed, section 5/12-4.3 (aggravated

21

No. 1-09-2840

battery of a child). The limited application of section 5-1103 in criminal proceedings the defendant advocates is inconsistent with the legislature's clear intent, expressed in the plain language of the statute, in enacting such a fee.

The court services fee was properly assessed following the defendant's convictions.

*$5 Court System Fee*

The State concedes that the imposition of the $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)) was improper because this provision applies only upon conviction "for violation of the Illinois Vehicle Code" or "similar provisions contained in county or municipal ordinances." We agree. The court system fee is vacated.

*Presentencing Custody Credit*

The defendant correctly asserts that he is entitled to a $5-per-day credit for each day spent in custody before he was sentenced. 725 ILCS 5/110-14 (West 2008). The mittimus shows the defendant received credit for 394 days spent in presentence custody, entitling him to a credit of $1,970. Whether that credit can offset a monetary penalty turns on whether the penalty constitutes a fine or a fee. 725 ILCS 5/110-14(a) (West 2008); People v. Jones, 223 Ill. 2d 569, 580, 861 N.E.2d 967 (2006). By their plain language, the DNA analysis fee and the court services fee are not fines. They cannot be offset by the custody credit earned by the defendant. See People v. Tolliver, 363 Ill. App.

22

3d 94, 97, 842 N.E.2d 1173 (2006), citing 725 ILCS 5/110-14 (West 2002). Because we reduced the defendant's convictions to straight possession, however, we vacate the $1,000 assessment levied under the Illinois Controlled Substances Act (720 ILCS 570/411.2 (West 2008)). An assessment may be imposed on remand consistent with the reduced convictions.

The defendant is entitled to have his presentencing custody credit of $1,970 offset the fines imposed.

CONCLUSION

The State failed to prove the defendant guilty of possession of 15 or more but less than 200 pills of MDMA, and guilty of possession of 5 or more but less than 15 grams of methamphetamine, where the forensic chemist commingled the nonhomogeneous pills before testing them, rendering her quantity and weight findings speculative. We reduce the defendant's conviction of unlawful possession of MDMA pills to a Class 4 felony and his conviction of unlawful possession of methamphetamine to a Class 3 felony. We remand for a new sentencing hearing on the lesser offenses.

We affirm the imposition of the $200 DNA analysis fee and the $25 court services fee. We vacate the $5 court system fee and the $1,000 controlled substances assessment. The defendant is entitled to a credit of $1,970 for the time spent in presentencing custody against all fines imposed.

Vacated in part and affirmed in part; cause remanded with

23

No. 1-09-2840

directions.

      CAHILL, and MCBRIDE, JJ., concur

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

---

THE PEOPLE OF THE STATE OF ILLINOIS,

      Plaintiff-Appellee,

      v.

EMMERITT ADAIR,

      Defendant-Appellant.

---

## No. 1-09-2840

Appellate Court of Illinois
First District, Sixth Division

Filed: December 10, 2010

---

**PRESIDING JUSTICE GARCIA delivered the opinion of the court.**

**CAHILL and MCBRIDE, JJ., concur.**

---

**Appeal from the Circuit Court of Cook County**
**Honorable Arthur F. Hill, Judge Presiding**

---

| | |
|---|---|
| **For DEFENDANT-APPELLANT** | **Daniel T. Mallon, Assistant Appellate Defender** |
| | **MICHAEL J. PELLETIER, State Appellate Defender** |
| | **Office of the State Appellate Defender** |
| | **203 North LaSalle Street, 24th Floor** |
| | **Chicago, Illinois 60601** |
| **For PLAINTIFF-APPELLEE** | **ANITA ALVAREZ, State's Attorney** |
| | **Alan J. Spellberg,** |
| | **Marie Quinlivan Czech,** |
| | **Mary Beth Kinnerk,** |
| | **County of Cook** |
| | **Room 309 - Richard J. Daily Center** |
| | **Chicago, Illinois 60602** |