# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Anthony*, 2011 IL App (1st) 091528-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARTINELL ANTHONY, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-09-1528 |
| Filed | November 7, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was properly convicted of two counts of unlawful possession of a weapon by a felon based on the possession of a firearm and ammunition for the firearm, but the $200 assessment for DNA analysis was vacated where defendant was previously ordered to submit a DNA sample and pay the fee, the $5 court system fee was vacated where the fee only applied to convictions for a violation of the Illinois Vehicle Code, the court services fee was upheld even though the offense for which defendant was convicted was not specifically listed in the statute authorizing the fee, the county jail medical fund fee was upheld even though defendant did not require medical attention during custody, and defendant was entitled to presentence credit against the mental health court fee and the Children's Advocacy Center charge. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-19320; the Hon. Lawrence Edward Flood, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; mittimus corrected. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Patrick F. Cassidy, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justice Garcia concurred in the judgment and opinion. Presiding Justice R. Gordon dissented, with opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant, Martinell Anthony, was convicted of two counts of unlawful possession of a weapon by a felon and sentenced to concurrent terms of six years' imprisonment. On appeal, defendant contends that one of his convictions must be vacated because it was unauthorized by statute. Defendant also disputes various fines and fees imposed against him. We issued our original decision on March 31, 2011. The Illinois Supreme Court subsequently directed us to vacate that decision (*People v. Anthony*, No. 112324 (Ill. Sept. 28, 2011) (supervisory order)) and to reconsider in light of *People v. Marshall*, 242 Ill. 2d 285 (2011), which we now do.

¶ 2    Defendant was arrested and charged by information with, among other things, two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 2008)) and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2008)). The two counts of unlawful possession of a weapon by a felon were based upon possession of a handgun and possession of the firearm ammunition inside that handgun. Specifically, the first count alleged that defendant "knowingly possessed on or about his person *** a handgun, after having been previously convicted of the felony offense of burglary." The second count alleged that defendant "knowingly possessed on or about his person any firearm ammunition, after having been previously convicted of the felony offense of burglary." The charge of aggravated unlawful use of a weapon alleged that defendant "knowingly carried in any vehicle *** a handgun, *** and the firearm possessed was uncased, loaded and immediately accessible at the time of the offense, and [defendant] has been previously convicted of *** burglary." The following evidence was presented at defendant's trial.

¶ 3    On September 11, 2008, at approximately 8 p.m., Chicago police officer Christopher Ware was in the parking lot of the 63rd Street Beach in Chicago, IL. The parking lot was lit by moonlight and artificial lighting in the lot. Officer Ware saw a woman sitting in the passenger seat of a vehicle and a man, whom he identified as defendant, standing near the vehicle holding a semi-automatic handgun. Defendant put the gun in his pocket and entered

the driver's seat of the vehicle. Officer Ware approached and told defendant to exit the vehicle. He asked defendant what he had been holding in his hand, and defendant replied that it was a cell phone. Officer Ware conducted a protective pat-down of defendant but did not discover a weapon. Defendant said the cell-phone he had been holding was inside the vehicle and gave the officer permission to search the vehicle. Upon a search of that vehicle, the officer found a loaded semiautomatic handgun under a jacket behind the front passenger seat that he believed was the same gun that he had seen defendant holding. A further search of the vehicle revealed a backpack under the rear seat that contained two handgun magazines and approximately 96 rounds of ammunition.

¶ 4    Defendant called his brother-in-law, Derrick Harris, as a witness. Harris owned the vehicle in which the weapons were found and he explained that, on the night of the incident, he and defendant had gone to the beach with two women. Harris was approximately 35 feet away from defendant when the police arrived and he did not see defendant with the weapon that the police recovered on the night of the incident. Harris testified that he was a Navy officer and that he was the owner of the .45-caliber semiautomatic handgun and the ammunition that the police found in his vehicle.

¶ 5    Following closing arguments, the trial court found defendant guilty of two counts of unlawful possession of a weapon by a felon based upon possession of the firearm and possession of the ammunition inside that firearm.[1] The court also found defendant guilty of one count of aggravated unlawful possession of a weapon, but merged that conviction into the first count of unlawful possession of a weapon by a felon. The court clarified that "the ammunition found inside the backpack at the rear of the vehicle "isn't a consideration by this court as far as these charges are concerned." The court sentenced defendant to concurrent terms of six years' imprisonment. This appeal followed.

¶ 6    Initially, a question was raised whether aggravated unlawful use of a weapon was a greater offense than unlawful use of a weapon by a felon. Although each offense is a Class 2 felony, the sentencing provision for unlawful use of a weapon by a felon provides for a sentence of 3 to 14 years' imprisonment (see 720 ILCS 5/24-1.1(e) (West 2008)), whereas the sentencing provision for aggravated unlawful use of a weapon provides for a sentence of 3 to 7 years' imprisonment (see 720 ILCS 5/24-1.6(d) (West 2008)). But *cf. People v. Johnson*, 237 Ill. 2d 81 (2010)). The parties and this court now agree that unlawful use of a weapon by a felon is the greater offense in this case.

¶ 7    Defendant first contends that one of his convictions for unlawful possession of a weapon should be vacated because the legislature did not intend to permit multiple convictions based upon the possession of a single, loaded firearm. Defendant did not preserve this issue in the trial court and asks that we review it for plain error. The plain error doctrine allows a reviewing court to address defects affecting substantial rights (1) if the evidence is closely balanced or (2) if fundamental fairness so requires rather than finding the claims waived. *People v. Carter*, 213 Ill. 2d 295, 299 (2004). Defendant does not claim that the evidence in

---

[1]During trial, the State introduced a certified copy of defendant's prior conviction for the forcible felony of burglary.

this case was closely balanced but, rather, he points out that our supreme court has held that "the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule." *People v. Harvey*, 211 Ill. 2d 368, 389 (2004); see also *Carter*, 213 Ill. 2d at 299 (considering the question of whether multiple convictions could be entered for unlawful possession of weapons by a felon based on simultaneous possession of two guns and ammunition for those guns under the second prong of the plain error doctrine). However, "[t]he first step of plain-error review is to determine whether any error occurred." *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). Accordingly, we first consider whether defendant's multiple convictions constituted error.

¶ 8     The question of whether the unlawful possession of a weapon by a felon statute permits separate offenses to be charged for simultaneous possession of a handgun and the firearm ammunition inside of that handgun is an issue of first impression.[2] The interpretation of a statute is a question of law that is reviewed *de novo*. *Carter*, 213 Ill. 2d at 301. Our primary objective when construing a statute is to ascertain and give effect to the intent of the legislature. *Carter*, 213 Ill. 2d at 301. We begin by examining the language of the statute, which is "the surest and most reliable indicator of legislative intent." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Where the language of the statute is clear and unambiguous, it must be read and given effect without exception, limitation, or other condition. *Carter*, 213 Ill. 2d at 301.

¶ 9     In this case, the plain and unambiguous language of the statute allows for multiple convictions based upon simultaneous possession of a firearm and firearm ammunition. Section 24-1.1 makes it unlawful for a person who has been convicted of a felony to possess "any firearm or any firearm ammunition." 720 ILCS 5/24-1.1(a) (West 2008). More importantly, the statute provides that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). It is undisputed that in the present case, defendant was found to be in possession of both a firearm and firearm ammunition. Therefore, we conclude that the plain language of the statute permits defendant's multiple convictions for unlawful possession of a weapon by a felon.

¶ 10    Defendant nevertheless relies upon our supreme court's decision in *Carter* to assert that the statute is ambiguous and that it therefore must be construed to prohibit his conviction for unlawful possession of a weapon based upon the ammunition inside the firearm.

¶ 11    In *Carter*, the defendant was found in possession of two loaded semiautomatic weapons, a .22-caliber handgun and a .25-caliber handgun, and an ammunition clip containing .22-caliber bullets. The defendant was charged with and convicted of, among other things, four counts of unlawful possession of weapons by a felon. Those four counts were based upon the defendant's possession of a .22-caliber handgun, a .25-caliber handgun, and ammunition for the .22-caliber handgun. *Carter*, 213 Ill. 2d at 298. On appeal, the supreme court was asked

---

[2]Although an issue of first impression, at least one case suggests in a footnote that the amended statute permits convictions for both the firearm and firearm ammunition. See *People v. Lee*, 379 Ill. App. 3d 533, 538 n.2 (2008).

to determine "whether multiple convictions can be entered for unlawful possession of weapons by a felon based on the simultaneous possession of two guns and the ammunition for those guns." *Carter*, 213 Ill. 2d at 299. The defendant argued that nothing in the statute indicated that each article of contraband possessed constituted a separate offense and that any ambiguity in the statute should be resolved in his favor. The defendant further argued that because all four of his convictions for unlawful possession were based on a single, simultaneous act of possession, three of his convictions had to be vacated under the one-act, one-crime rule. *Carter*, 213 Ill. 2d at 300.

¶ 12 The court stated that whether the legislature intended for the simultaneous possession of weapons and ammunition to be the same offense or separate offenses required it to determine the statute's " 'allowable unit of prosecution.' " *Carter*, 213 Ill. 2d at 302 (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 220-21 (1952)). The court found that the statute neither prohibited nor permitted the State to bring separate charges for the simultaneous possession of firearms and firearm ammunition because the term "any," as used in the statute making it unlawful for a felon to possess "any firearm or any firearm ammunition," could mean either singular or plural. (Internal quotation marks omitted.) *Carter*, 213 Ill. 2d at 301-02. The court thus found that the term "any" in the statute did not adequately define the allowable unit of prosecution and that the statute was therefore ambiguous. As such, the rule of lenity required the court to construe the statute in the defendant's favor. *Carter*, 213 Ill. 2d at 302.

¶ 13 The court then noted that it had consistently held that, "where a statute is ambiguous, in the absence of a statutory provision to the contrary, simultaneous possession could not support multiple convictions." *Carter*, 213 Ill. 2d at 302. The court cited to its prior decision in *People v. Manning*, 71 Ill. 2d 132 (1978), in which the defendant was found guilty of two counts of possession of controlled substances. In *Manning*, 71 Ill. 2d at 137, the State argued that the defendant committed two separate offenses in that he knowingly possessed two types of controlled substances, and the defendant asserted that his simultaneous possession of both substances arose out of a single act. The court held that "in the absence of a statutory provision to the contrary, the simultaneous possession of more than one type of controlled substance, under the circumstances shown on this record, constituted a single offense, and only one sentence should have been imposed." *Manning*, 71 Ill. 2d at 137.

¶ 14 Our supreme court acknowledged in *Carter* that its decision in *Manning* had been superceded by an amendment to the Illinois Controlled Substances Act (the Act) which expressly authorized multiple convictions where a defendant simultaneously possesses more than one type of controlled substance. See 720 ILCS 570/402 (West 2004) ("[a] violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act"). The court noted that the amendment to the Act demonstrated that the legislature "knows how to authorize, specifically, multiple convictions for simultaneous violations of a single criminal statute." *Carter*, 213 Ill. 2d at 303. The court also indicated its agreement with the State that "a felon who possesses a loaded gun may be more dangerous than a felon who possesses a gun but no ammunition." *Carter*, 213 Ill. 2d at 306. However, the court noted that it was for the legislature to define that allowable unit of prosecution and held that "under the facts of this record, in the absence of a specific

-5-

statutory provision to the contrary, the simultaneous possession of two firearms and firearm ammunition constituted a single offense, and that only one conviction for unlawful possession of weapons by a felon could be entered." *Carter*, 213 Ill. 2d at 303-04.

¶ 15    After *Carter*, the legislature amended the unlawful possession of a weapon by a felon statute by adding the language providing that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). Defendant acknowledges that the amendment to the statute "indicates that two convictions are proper if a defendant possesses two firearms or if he separately possesses a firearm and firearm ammunition." He claims, however, that the statute does not address the circumstances in this case or authorize a second conviction based solely upon the fact that the firearm found in defendant's possession was loaded with ammunition. Defendant asserts that, as in *Carter*, the statute "neither prohibits nor permits the State to bring separate charges for the simultaneous possession of firearms and firearm ammunition." Therefore, defendant concludes, the statute does not adequately define the allowable unit of prosecution and must be construed in his favor so as to prohibit his conviction for unlawful possession of a weapon based upon the ammunition inside of the handgun. We disagree.

¶ 16    As we previously found, the plain language of the statute allows for multiple convictions based upon possession of both a firearm and firearm ammunition. The statute contains no exception for situations in which the ammunition is loaded inside of the handgun. Because the language of the statute is clear and unambiguous, we will not interpret the statute so as to create such an exception. See *Carter*, 213 Ill. 2d at 301; *People v. Woodard*, 175 Ill. 2d 435, 443 (1997) ("Where an enactment is clear and unambiguous, the court is not free to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express ***."). Additionally, defendant acknowledges that multiple convictions for simultaneous possession of a firearm and separate firearm ammunition are proper under the amended statute but claims that multiple convictions for possession of a loaded firearm are improper. Taking defendant's argument to its logical conclusion would result in a greater punishment for a felon who possessed an unloaded firearm and separately possessed firearm ammunition than would result for a felon who possessed a loaded firearm. A reviewing court may not interpret a statute in a way that produces absurd results. *Pullen*, 192 Ill. 2d at 42; *People v. Kohl*, 364 Ill. App. 3d 495, 501 (2006). Defendant's interpretation of the statute would produce such a result.

¶ 17    In addition, there is no dispute that the statute was amended in response to the decision in *Carter*, and we note that two of the defendant's convictions in that case were based upon possession of a loaded handgun. See *Carter*, 213 Ill. 2d at 298. Moreover, when the legislature amended the unlawful possession of a weapon by a felon statute, it did so by adding almost the identical language that was added to the Controlled Substances Act and that the supreme court in *Carter* recognized expressly authorized multiple convictions based upon simultaneous possession of different drugs. See *Carter*, 213 Ill. 2d at 303. In *Carter*, our supreme court also stated that this amendment to the Controlled Substances Act demonstrated that the legislature knew how to authorize multiple convictions for simultaneous violations of a single criminal statute. In this case too, through the amendment to the unlawful possession of a weapon by a felon statute, the legislature has specifically

authorized multiple convictions for simultaneous violations of the statute. Defendant committed simultaneous violations of the statute by possessing both a firearm and firearm ammunition, and we find no error in his multiple convictions based upon that simultaneous possession. Because we find no error, there can be no plain error. See *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005).

¶ 18    Defendant also claims that the legislative history shows that the amendment to the statute was not intended to permit multiple convictions based upon a loaded firearm. However, where the language of a statute is plain and unambiguous, we must apply the statute without resort to further aids of statutory construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). Where statutory language is ambiguous, however, we may consider other extrinsic aids for construction, such as legislative history and transcripts of legislative debates, to resolve the ambiguity. *Collins*, 214 Ill. 2d at 214. In this case, the language of the unlawful possession of a weapon statute is clear and unambiguous. Accordingly, we will not interpret the statute by considering extrinsic aids such as legislative history. See *Collins*, 214 Ill. 2d at 214.

¶ 19    Defendant next contends that several of the fines and fees assessed against him must be vacated. He also claims that he is entitled to have presentence credit applied toward some of those fines. "The propriety of a trial court's imposition of fines and fees raises a question of statutory interpretation, which we review *de novo*." *People v. Price*, 375 Ill. App. 3d 684, 697 (2007).

¶ 20    The State initially argues that defendant has forfeited these claims because he failed to raise any issue regarding the fines he was assessed in his motion to reconsider his sentence. Defendant acknowledges his failure to do so, but he points out that the issue of whether a sentence is authorized by statute or a defendant is entitled to presentence credit against a fine is not subject to forfeiture and may be raised for the first time on appeal. See, *e.g.*, *People v. Thompson*, 209 Ill. 2d 19, 24 (2004) (a sentence not authorized by statute is void and can be attacked at any time and in any court); *People v. Woodard*, 175 Ill. 2d 435, 457 (1997). Accordingly, we review the fines and fees levied against defendant to determine if they were authorized by statute.

¶ 21    Defendant first challenges his $200 assessment for DNA analysis pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2008)). Section 5-4-3(a) provides that "[a]ny person *** convicted or found guilty of any offense classified as a felony under Illinois law *** shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section." 730 ILCS 5/5-4-3(a) (West 2008). Section 5-4-3(j) then provides that "[a]ny person required by subsection (a) to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for analysis and categorization into genetic marker grouping, in addition to any other disposition, penalty, or fine imposed, shall pay an analysis fee of $200." 730 ILCS 5/5-4-3(j) (West 2008).

¶ 22    Defendant claims that the $200 DNA fee was improperly assessed against him because he previously submitted a DNA sample in connection with a prior felony conviction for burglary or possession of a controlled substance. Defendant asserts that the statute contemplates the imposition of a single, one-time fee and does not authorize additional

assessments.

¶ 23     This issue was decided by our supreme court's recent decision in *People v. Marshall*, 242 Ill. 2d 285 (2011). In that case, the court held that section 5-4-3 "authorizes a trial court to order the taking, analysis and indexing of a qualifying offender's DNA, and the payment of the analysis fee only where that defendant is not currently registered in the DNA database." *Marshall*, 242 Ill. 2d at 303. Therefore, if defendant in this case was previously ordered to submit a DNA sample and pay the corresponding fee, the trial court's order imposing the $200 DNA fee is void and must be vacated. See *Marshall*, 242 Ill. 2d at 303.

¶ 24     The State claims that defendant has failed to demonstrate that he has previously been ordered to submit a DNA sample. The State argues that it is defendant's burden to make this showing and that, because of that failure, this issue should be resolved against him. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). However, the record demonstrates that at defendant's sentencing hearing, the parties agreed that defendant pled guilty to three felony narcotics violations on November 11, 2002. The record also shows that defendant pled guilt to burglary and was sentenced on that conviction in January of 2004. These convictions were imposed after the statute was amended to require all persons convicted of a felony to submit a DNA sample and pay a corresponding fee. See Pub. Act 90-130, § 30 (eff. Jan. 1, 1998) (amending 730 ILCS 5/5-4-3 (West 1996)); Pub. Act 92-829, § 5 (eff. Aug. 22, 2002) (amending 730 ILCS 5/5-4-3 (West 2002)). Therefore, we can presume that the trial court imposed this requirement when it sentenced defendant on at least one of these convictions. See *People v. Leach*, 2011 IL App (1st) 090339, ¶ 38 (the trial court is presumed to know and follow the law, unless the record indicates otherwise). Accordingly, we find that the record sufficiently establishes that defendant was previously ordered to submit a DNA sample and to pay the corresponding fee.

¶ 25     Defendant next claims, and the State concedes, that the $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)) was improper because this provision applies only upon conviction "for violation of the Illinois Vehicle Code" or "similar provisions contained in county or municipal ordinances." We agree with the parties and find that the $5 court system fee must be vacated because defendant's convictions were not for violations of the Illinois Vehicle Code or a similar county or municipal ordinance. See *People v. Adair*, 406 Ill. App. 3d 133, 145 (2010) (vacating the court system fee where the defendant was convicted of possession of a controlled substance because the fee applies only to convictions for violations of the Illinois Vehicle Code or a similar municipal ordinance).

¶ 26     Defendant next claims that the $25 court services fee assessment must be vacated because it applies only to the offenses enumerated in the statute and because he was not convicted of one of those offenses. See 55 ILCS 5/5-1103 (West 2008). The statute provides, in relevant part:

"In criminal, local ordinance, county ordinance, traffic and conservation cases, [the court services fee] shall be assessed against the defendant upon a plea of guilty, stipulation of facts or findings of guilty, resulting in a judgment of conviction, or order of supervision, or sentence of probation without entry of judgment pursuant to [certain enumerated criminal statutes]." 55 ILCS 5/5-1103 (West 2008).

-8-

¶ 27    This court has considered the same argument defendant raises in this case and held that the "the statute permits assessment of this fee upon any judgment of conviction." *People v. Williams*, 405 Ill. App. 3d 958, 965 (2010); *Adair*, 406 Ill. App. 3d at 144-45 (finding that the court services fee was properly assessed even though the offense for which the defendant was convicted in that case, possession of a controlled substance, was not listed in the statute). We follow the holdings in these cases and find that the court services fee was properly assessed in this case, even though the offense for which defendant was convicted is not specifically listed in the statute.

¶ 28    Defendant also claims that the imposition of the $10 county jail medical fund fee was unauthorized because he required no medical attention during custody. See 730 ILCS 125/17 (West 2008). At the time of defendant's offense, in September of 2008, the statute provided:

> "An arresting authority shall be responsible for any incurred medical expenses relating to the arrestee until such time as the arrestee is placed in the custody of the sheriff. However, the arresting authority shall not be so responsible if the arrest was made pursuant to a request by the sheriff. When medical expenses are required by any person held in custody, the county shall be entitled to obtain reimbursement from the County Jail Medical Costs Fund to the extent moneys are available from the Fund. To the extent that the person is reasonably able to pay for that care, including reimbursement from any insurance program or from other medical benefit programs available to the person, he or she shall reimburse the county.
>
> The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation, other than a petty offense or business offense. The fee shall be taxed as costs to be collected from the defendant, if possible, upon conviction or entry of an order of supervision. The fee shall not be considered a part of the fine for purposes of any reduction in the fine.
>
> All such fees collected shall be deposited by the county in a fund to be established and known as the County Jail Medical Costs Fund. Moneys in the Fund shall be used solely for reimbursement to the county of costs for medical expenses and administration of the Fund." 730 ILCS 125/17 (West 2008).

¶ 29    We initially note that the current version of the statute, set forth above, is the result of an amendment to the statute which occurred approximately one month prior to defendant's offense. The prior version of the statute provided, in relevant part:

> "All such fees collected shall be deposited by the county in a fund to be established and known as the Arrestee's Medical Costs Fund. Moneys in the Fund shall be used solely for reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff and administration of the Fund." 730 ILCS 125/17 (West 2006).

This court has analyzed this prior version of the statute and held that it applied to defendants who did not incur medical costs while under arrest. See *People v. Jones*, 397 Ill. App. 3d 651, 663 (2009). In *Jones*, 397 Ill. App. 3d at 662, this court reasoned that the prior version of the statute did not place any conditions on the county's right to the fee and that the last sentence of the statute quoted above indicated that the county could use the $10 fee for

reimbursement of either costs for medical expenses incurred by the defendant while under arrest or costs for administration of the fund. Recently, in *Hubbard*, 404 Ill. App. 3d at 105-06, this court again considered the previous version of the statute and followed its decision in *Jones* to conclude that the fee was properly assessed upon the defendant, regardless of whether he was injured or treated while in custody. Other appellate districts have also considered the prior version of the statute and reached similar conclusions. See, *e.g.*, *People v. Evangelista*, 393 Ill. App. 3d 395, 400 (2009); *People v. Unander*, 404 Ill. App. 3d 884, 888-90 (2010).

¶ 30        In Public Act 95-842, effective August 15, 2008, the legislature amended section 17 of the Act. Pub. Act 95-842, § 5 (eff. Aug. 15, 2008) (amending 730 ILCS 125/17 (West 2006)). The amended version replaced "reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff" with "reimbursement to the county of costs for medical expenses." Pub. Act 95-842, § 5 (eff. Aug. 15, 2008). The amendment also changed the title of the fund from the "Arrestee's Medical Costs Fund" to the "County Jail Medical Costs Fund." Pub. Act 95-842, § 5 (eff. Aug. 15, 2008).

¶ 31        In this case, defendant's offense occurred on September 11, 2008, after the effective date of the amendment. Therefore, the current version of the statute, set forth above, applies in this case. Prior decisions have considered the statute when it contained the language "reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff" and when the fund was titled "Arrestee's Medical Costs Fund" and found that a defendant could be charged the fee even if he did not incur medical costs while under arrest. By replacing that language with the current version of statute, the amendment makes it clear that the fee is to be collected irrespective of whether a defendant incurs injury or requires treatment while in custody and supports the analysis of this court's prior decisions on this issue. Accordingly, we follow our holdings in *Jones* and *Hubbard* and find that defendant was properly assessed the $10 county jail medical fund fee.

¶ 32        Defendant further claims, and the State concedes, that he is entitled to presentence credit toward two of the fines imposed against him by the trial court. The record shows that defendant was assessed a $10 mental health court fee (55 ILCS 5/5-1101(d-5) (West 2008)) and a $30 Children's Advocacy Center (CAC) charge (55 ILCS 5/5-1101(f-5) (West 2008)). These charges are both fines to which defendant is entitled to apply presentence credit. See *People v. Graves*, 235 Ill. 2d 244, 252, 255 (2009) (mental health fee); *People v. McNeal*, 405 Ill. App. 3d 647 (2010) (CAC charge).

¶ 33        Accordingly, pursuant to Supreme Court Rule 615(b)(1) (Ill. S. Ct. R. 615(b)(1)), the $5 court system fee and the $200 DNA assessment are vacated. We order that the mittimus be corrected to reflect a credit of $40 toward the imposed fines which, along with the vacatur of the $5 court system fee and the $200 DNA assessment, reduces defendant's monetary judgment from $580 to $335.

¶ 34        Affirmed in part and vacated in part; mittimus corrected.

¶ 35    JUSTICE ROBERT E. GORDON, dissenting:

¶ 36    On appeal, defendant asked this court to vacate one of his two convictions on the ground that the possession of a single loaded firearm cannot serve as the basis for multiple convictions.

¶ 37    I must dissent, because I agree that we must vacate one of defendant's two convictions. I reach this conclusion based on our legislature's amendment, enacted in response to our supreme court's decision in *People v. Carter*, 213 Ill. 2d 295 (2004).

¶ 38    This is a case of first impression; neither the court nor the parties found another case interpreting and applying the 2005 amendment. Pub. Act 94-284, § 10 (eff. July 21, 2005) (amending 720 ILCS 5/24-1.1(e) (West 2004)).[3]

¶ 39    The majority finds that the Illinois Supreme Court's decision in *Carter* presented an issue, which was then resolved by a statutory amendment. The majority finds that the amendment is not ambiguous and thus our job is done. However, the *Carter* case actually presented a number of different issues, which were not resolved by the subsequent amendment. Once one realizes the different issues involved, the ambiguities in the amendment become apparent.

¶ 40    In *Carter*, during a search of defendant's vehicle, the police recovered weapons and ammunition.[4] *Carter*, 213 Ill. 2d at 298. As a result of this one incident, defendant was charged with four separate counts of unlawful possession of a weapon by a felon. *Carter*, 213 Ill. 2d at 298. The four counts were for: (1) an unloaded .22-caliber handgun; (2) a .25-caliber handgun; (3) the ammunition clip that was attached to the .25-caliber handgun; and (4) a clip for the .22-caliber handgun, that was found near the .22-caliber handgun, but that was not attached to it. *Carter*, 344 Ill. App. 3d at 664-65.

¶ 41    The *Carter* case thus presented at least three potential issues: (1) whether the simultaneous possession of two firearms constituted one offense or two; (2) whether the possession of a loaded handgun constituted one offense or two; and (3) whether a loaded handgun presented a different issue than an unloaded handgun with a clip nearby.

¶ 42    The *Carter* court found that, under the version of the statute that applied to the facts

---

[3]The majority states that the *Lee* case "suggests" that the 2005 amendment permits multiple convictions for one loaded firearm. *Supra* ¶ 8 n.2 (citing *Lee*, 379 Ill. App. 3d at 538 n.2). The *Lee* case does not suggest that at all. In *Lee*, the law that governed was the old statute, prior to the amendment. *Lee*, 379 Ill. App. 3d at 538. In *Lee*, the defendant argued, the State conceded, and the trial court agreed that the old statute did not permit multiple convictions for one loaded firearm. *Lee*, 379 Ill. App. 3d at 538. The *Lee* court did observe that the statute had been subsequently amended, and the court reiterated the language of the amendment in a footnote, but the *Lee* court had no reason to consider the 2005 amendment, and it did not. *Lee*, 379 Ill. App. 3d at 538-39, 538 n.2.

[4]In *Carter*, there was a drive-by shooting; the shooter's vehicle crashed as it tried to avoid the police; the defendant, who was the driver, fled from the crashed vehicle; and police officers recovered weapons and ammunition from the crashed vehicle. *People v. Carter*, 344 Ill. App. 3d 663, 664-65 (2003), *aff'd in part and rev'd in part by People v. Carter*, 213 Ill. 2d 295 (2004).

before it, the simultaneous possession of the two weapons and their respective ammunition constituted one offense. *Carter*, 213 Ill. 2d at 304. Thus, the *Carter* court resolved all three potential issues with one holding. However, the *Carter* court asked our legislature to provide guidance on the issues raised by "the simultaneous possession of multiple firearms" and "the simultaneous possession *** [of] a firearm and ammunition." *Carter*, 213 Ill. 2d at 304. Our supreme court observed that almost every federal court of appeals that had considered these issues had found only one crime. *Carter*, 213 Ill. 2d at 304. Our supreme court specifically asked for legislative guidance with respect to a "loaded gun," stating: "[w]hile we agree with the State that a felon who possesses a loaded gun may be more dangerous than a felon who possesses a gun but no ammunition, it is for the legislature to 'defin[e] what it desires to make the [allowable] unit of prosecution.' " (Internal quotation marks omitted.) *Carter*, 213 Ill. 2d at 306 (quoting *Manning*, 71 Ill. 2d at 137, quoting *Bell v. United States*, 349 U.S. 81, 83 (1955)).

¶ 43    The subsequent amendment states that: "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). Thus, "each firearm" leads only to a "single" offense. The amendment refers simply to "each firearm," without making any distinction between a loaded firearm and an unloaded firearm. Thus, to resolve any ambiguity in the defendant's favor as we are required to do, we must hold that "each" loaded firearm creates only a "single" offense. *Carter*, 213 Ill. 2d at 301 ("Criminal or penal statutes must be strictly construed in the defendant's favor ***.").

¶ 44    In other weapons laws, the legislature has carefully drawn distinctions among: (1) a "loaded" firearm; (2) an "unloaded" firearm where "the ammunition for the weapon was immediately accessible"; and (3) an unloaded firearm without immediately accessible ammunition. 720 ILCS 5/24-1.6 (West 2008). However, the legislature chose not to draw those distinctions here. Thus, resolving any ambiguity in favor of the defendant, we must find that "each firearm" means a firearm, whether loaded or not. 720 ILCS 5/24-1.1 (West 2008).

¶ 45    The ambiguity inherent in the statute becomes clear when we consider the phrase "each *** ammunition." 720 ILCS 5/24-1.1 (West 2008). "Ammunition" can be either plural or singular;[5] while "each" is singular.[6] The legislature's use of the phrase "each *** ammunition" raises the question of whether "each" round of ammunition can lead to a separate offense or whether an entire collection of ammunition, without regard to the number of clips or rounds present, constitutes only one offense. If we were to accept an interpretation

---

[5]Although the Criminal Code of 1961 defines "ammunition" as any one self-contained cartridge (720 ILCS 5/2-7.1 (West 2008), incorporating by reference 430 ILCS 65/1.1 (West 2008)), the word is commonly understood to be a plural noun. A dictionary defines "ammunition" as "[t]he projectiles, along with their fuses and primers, that can be fired from guns or otherwise propelled." The American Heritage Dictionary 103 (2d coll. ed. 1982). The word "projectiles" is plural.

[6]"Each" is defined as "[b]eing one of two or more, considered individually; every." The American Heritage Dictionary 434 (2d coll. ed. 1982). "Each" thus means "being one."

that both the rounds in a firearm and the firearm itself can give rise to separate offenses, I am not sure how many separate offenses could result from one loaded firearm, considering the number of rounds in the firearm itself or in any attached clip. *Carter*, 344 Ill. App. 3d at 675 (McLaren, J., dissenting) (noting "the absurd result" that would be reached if every round of ammunition gave rise to a separate offense).

¶ 46 The majority suggests that, if we hold that a loaded firearm represents only one offense, our holding would have the absurd result of encouraging convicted felons to carry their guns loaded. If a holding that a loaded firearm is a single offense would lead to an absurd result, then there is absurdity no matter which way we interpret this amendment. As already discussed above, one firearm with a clip attached could lead to dozens of offenses. If there is ambiguity in a criminal or penal statute, we are required to interpret it in the defendant's favor. *Carter*, 213 Ill. 2d at 301 ("Criminal or penal statutes must be strictly construed in the defendant's favor ***.").

¶ 47 Since I decide this issue based solely on statutory construction, I do not reach any possible constitutional questions, such as whether the statute violates the one-act, one-crime rule. *People v. Quinones*, 362 Ill. App. 3d 385, 397 (2005) (multiple convictions "based on the same act, specifically, defendant's possession of the firearm" "cannot stand under the one-act, one-crime doctrine"). "One-act, one-crime principles apply only if the statute is construed as permitting multiple convictions ***." *Carter*, 213 Ill. 2d at 301. Our supreme court has "repeatedly stated that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort." *In re E.H.*, 224 Ill. 2d 172, 178 (2006); *People v. Melchor*, 226 Ill. 2d 24, 34 (2007).

¶ 48 Since the amendment is ambiguous, I find that only one offense is permitted for a single loaded firearm, and I would vacate one of defendant's two convictions. Defendant did not ask this court to remand for resentencing; otherwise I would also have ordered it.