958 N.E.2d 1123 (2011)
354 Ill. Dec. 927
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Tina S. TILLEY, Defendant-Appellant.
No. 4-10-0105.
Appellate Court of Illinois, Fourth District.
September 29, 2011.
*1124 Michael J. Pelletier, State Appellate Defender, Karen Munoz, Deputy Defender, Gary R. Peterson (argued), Asst. Appellate Defender, Office of State Appellate Defender, Springfield, for Tina S. Tilley.
Thomas J. Brown, Livingston County State's Attorney, Patrick Delfino, Director, Robert J. Biderman, Dep. Director, Kathy Shepard (argued), Staff Atty., State's Attorneys Appellate Prosecutor, Pontiac, for People.

OPINION
Justice COOK delivered the judgment of the court, with opinion.
¶ 1 In November 2009, following a bench trial, the trial court found defendant, Tina Tilley, guilty of participation in methamphetamine manufacturing, and in December 2009, the court sentenced defendant to 12 years' imprisonment. Defendant appeals, arguing the State failed to prove she participated in manufacturing between 100 and 400 grams of "a substance containing methamphetamine." 720 ILCS 646/15(a)(1) (West 2008). The State maintains it proved beyond a reasonable doubt that the substance weighed more than 100 grams. We agree with the State and affirm.

¶ 2 I. BACKGROUND
¶ 3 In February 2009, officers from the Livingston County Proactive Unit and the Illinois State Police Methamphetamine Response Team (Meth Response Team) conducted a search of a residence in Pontiac, Illinois, belonging to defendant and her husband, Jimmy Tilley, after obtaining Jimmy's consent. In the course of the search, officers discovered the remnants of a meth lab in defendant and Jimmy's bedroom. Numerous items associated with the manufacture and use of methamphetamine were discovered in the bedroom. A large trash bag contained, among other things, a smaller gift bag containing a chunky powder that field-tested positive for methamphetamine. The powder weighed 391.1 grams. A sample was retained for later testing. A laboratory report indicated the sample weighed 25.3 grams and tested positive for the presence of methamphetamine. Officers seized and later destroyed the various hazardous materials used in or produced by the manufacture of methamphetamine, including the powder not preserved for testing.
¶ 4 Jimmy waived his Miranda rights (see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) and gave an interview at the residence. Jimmy stated he learned how to manufacture methamphetamine from his brother and sister, Patrick and Shelly Tilley, in 2008. He described the process by which he manufactured methamphetamine and reported he had produced methamphetamine approximately 10 times at several locations, including his home. He later drafted *1125 and signed a handwritten statement regarding his activities during the day preceding the search. He reported he had "cooked" 3 boxes of pseudoephedrine pills and produced approximately 1 1/2 grams of methamphetamine.
¶ 5 Defendant was arrested and taken to the Livingston County jail, where she waived her Miranda rights, gave an interview, and drafted and signed a handwritten statement. In her interview, defendant stated she had been purchasing pseudoephedrine pills for several months for Jimmy to use in his manufacture of methamphetamine.
¶ 6 On February 9, 2009, the State charged defendant with unlawful participation in methamphetamine manufacturing (see 720 ILCS 646/15(a)(1) (West 2008) (defining the offense)), alleging she knowingly participated in the manufacture of between 100 and 400 grams of a substance containing methamphetamine (see 720 ILCS 646/15(a)(2)(C) (West 2008) (prescribing penalties for participating in the manufacture of that amount of such a substance)).
¶ 7 On August 12 and November 10, 2009, defendant and Jimmy were tried jointly in a bench trial. Special agent Courtney Mauser of the Meth Response Team testified at length about the powder he observed in the gift bag. Initially, Mauser described it as "a white and black chunky substance that field tested positive for the presence of methamphetamine." He testified he took what he considered a "characteristic sample" to use in testing. He agreed with the State's characterization of the powder as "some sort of a white, powdery substance." Mauser clarified the powder was produced in the course of the methamphetamine-manufacturing process. He agreed with the State's characterization of what he observed in the gift bag as "kind of a pile of substance." On cross-examination, he agreed with Jimmy's counsel's characterization of the powder as "a white, chunky substance with black chunks." On cross-examination by defendant's attorney, Mauser testified, "[W]hat was found was not finished product; it was a substance containing methamphetamine, which is all of the chemicals mixed together." He stated the powder he found could be reused to produce more methamphetamine. On redirect, he agreed with the State's characterization of the powder as "a white substance" with "some black in it" and reiterated that the powder was not methamphetamine in its finished state.
¶ 8 In November 2009, the trial court found defendant guilty of participation in methamphetamine manufacturing and found the mass of the substance containing methamphetamine produced with defendant's participation was between 100 and 400 grams. In December 2009, the court denied defendant's motion for a new trial and sentenced her to 12 years' imprisonment. In February 2010, the court denied defendant's motion for reconsideration of sentence.
¶ 9 This appeal followed.

¶ 10 II. ANALYSIS
¶ 11 On appeal, defendant argues the State failed to prove the mass of the substance containing methamphetamine beyond a reasonable doubt. Specifically, she maintains the State was required to test each allegedly distinct substance (i.e., the "white, chunky" powder and the "black chunks") for the presence of methamphetamine and weigh the substances separately. We agree with the State that it proved defendant participated in manufacturing between 100 and 400 grams of a substance containing methamphetamine.
*1126 ¶ 12 We will affirm the trial court's guilty verdict if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." People v. Brown, 169 Ill.2d 132, 152, 214 Ill.Dec. 433, 661 N.E.2d 287, 296 (1996). "The fact finder's verdict will not be overturned unless its verdict is so unreasonable, improbable, and unsatisfactory as to leave a reasonable doubt as to the defendant's guilt." Id.
¶ 13 As with possession crimes, "[w]hen a defendant is charged with [participation in the manufacture] of a specific amount of an illegal drug * * * and there is a lesser included offense of [participation in the manufacture] of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt." People v. Jones, 174 Ill.2d 427, 428-29, 221 Ill.Dec. 192, 675 N.E.2d 99, 100 (1996). In this case, since the crime charged included the lesser offense of participation in the manufacture of a smaller amount of methamphetamine, the State was required to prove beyond a reasonable doubt that the mass of the "substance containing methamphetamine" exceeded 100 grams.
¶ 14 Defendant asserts the powder at issue in this case consisted of multiple substances, within the meaning of the statute. According to defendant, the State was required to test and weigh separately the "white, chunky" powder and the "black chunks" found in the gift bag. As the methamphetamine found in the positive test could have been attributed to one of these materials but not the other and the State failed to weigh the materials separately, defendant argues, the State failed to prove that any specific mass of any single substance contained methamphetamine. Defendant asks us to reduce her conviction to participation in manufacturing less than 15 grams of a substance containing methamphetamine (720 ILCS 646/15(a)(2)(A) (West 2008)), the slightest crime for participation in manufacturing methamphetamine.
¶ 15 We disagree with defendant's contention that the "white, chunky" powder and the "black chunks" constituted more than one substance. Perhaps due to the wide range of circumstances in which it may be applied, no court has defined what constitutes a single substance as opposed to multiple substances. However, at a minimum, courts have construed "substance" to include a "mixture" of different chemicals created by the defendant. See People v. Butler, 304 Ill.App.3d 750, 758, 237 Ill.Dec. 559, 709 N.E.2d 1272, 1278 (1999) ("The cocaine-containing liquid in this case certainly falls within the ordinary meaning of the term `mixture,' which is encompassed within the definition of `substance.'"). The court in People v. Haycraft, 349 Ill.App.3d 416, 428, 285 Ill.Dec. 260, 811 N.E.2d 747, 759 (2004), applied this rule. There, the defendant possessed several containers with ingredients for manufacturing methamphetamine. Id. The liquid and nonliquid ingredients had separated within the containers. Id. The appellate court affirmed the defendant's conviction and sentence based on the combined mass of the containers' contents where only a sample from each container was tested. Id. It held, "Methamphetamine is its ingredients, * * * whether cooked to its final, marketable form or not. The defendant combined the methamphetamine ingredients into the container; thus, the mixture in the container constituted a `substance containing methamphetamine.'" Id. The State was not required to test separately the liquid and nonliquid materials found in the containers, and the officers' *1127 method of obtaining a sample to test from each container after shaking the container to reintegrate its contents was permissible. Id.
¶ 16 In the present case, several aspects of the powder and the testimony concerning it inform our conclusion that the powder constituted a single substance within the meaning of the statute. First, the powder was a mixture of different chemicals created by Jimmy, with defendant's participation, in his manufacture of methamphetamine. Indeed, the conclusion that the powder in this case constituted a mixture within the meaning of Butler is more compelling than in Haycraft, where the chemicals comprising the substance, once mixed, had separated into liquid and nonliquid components. Here, the powder's apparent white and black components remained blended together when the powder was found. We also note the supreme court has unequivocally stated that a byproduct of methamphetamine production, such as the powder in this case, can be considered a "substance" within the meaning of the statute. People v. McCarty, 223 Ill.2d 109, 126, 306 Ill.Dec. 570, 858 N.E.2d 15, 27 (2006) ("[T]he plain meaning of `substance containing methamphetamine' encompasses by-product of the methamphetamine manufacturing process that tests positive for the presence of the drug.").
¶ 17 Next, the powder was found in a single container. This court has indicated that materials found in separate containers should be considered separate "substances" even if the contents of the different containers resemble each other. See People v. Coleman, 391 Ill.App.3d 963, 973, 330 Ill.Dec. 930, 909 N.E.2d 952, 962 (2009) (stating the contents of the defendant's 15 bags of suspected cocaine were "15 physically separate substances"). This approach is consistent with the related general requirement that the contents of separate containers be tested separately for the presence of illicit materials. See id. at 971-72, 330 Ill.Dec. 930, 909 N.E.2d at 961 ("If the police seize separate bags or containers of suspected drugs, they must test a sample from each bag or container to prove it contains a controlled substance."). The conversethat the contents of one container, if not further segregated or self-contained, may, within reason, be considered one substanceappears a sound rule of thumb. See id. at 972-73, 330 Ill.Dec. 930, 909 N.E.2d at 961-62 (hypothetically stating if a defendant combined 15 grams of cocaine and 900 grams of baking soda in a single freezer bag, "the two substances would become one substancei.e., 915 grams of a substance containing cocaine"). Cf. Jones, 174 Ill.2d at 429-30, 221 Ill.Dec. 192, 675 N.E.2d at 101 (holding the contents of five packets within one bag could not be considered a single substance); People v. Adair, 406 Ill. App.3d 133, 141, 346 Ill.Dec. 292, 940 N.E.2d 292, 299-300 (2010) (holding different-colored pills could not be considered one substance merely by their commingling in a single bag).
¶ 18 Further, even assuming the powder could be sorted into its distinct chemical components, some containing methamphetamine and others not, the State is generally entitled to establish the mass of a controlled substance without altering its condition or removing possibly identifiable, distinct, licit materials. For example, in People v. Newell, 77 Ill.App.3d 577, 579, 33 Ill.Dec. 66, 396 N.E.2d 291, 293 (1979), this court held "the State is not required to process and condense the seized material to minimize the weight of the contraband and it may rely on its weight at the time it is impressed." In that case, the defendant's cannabis plants initially weighed 609.1 grams but weighed only 87.1 grams after the roots were removed and the plants dried. Id. at 578, 33 Ill.Dec. 66, *1128 396 N.E.2d at 292-93. This court concluded "the jury was entitled to consider the weight of 600 grams obtained by the deputy sheriff when arriving at its decision." Id. at 579, 33 Ill.Dec. 66, 396 N.E.2d at 293; see also People v. Calhoun, 46 Ill. App.3d 691, 696-97, 5 Ill.Dec. 55, 361 N.E.2d 55, 59 (1977) (where paper and soil which were mixed together with cannabis were included in ascertaining the mass of the "substance containing cannabis," the appellate court concluded "the State may determine the weight of the contraband based on its condition at the time it is seized or discovered").
¶ 19 Finally, we note Mauser's testimonyand the parties' questioning of him frequently referred to the gift bag's contents as a singular substance: at various times, the powder was characterized as "a white and black chunky substance," "some sort of a white, powdery substance," "kind of a pile of substance," "a white, chunky substance with black chunks," "a substance containing methamphetamine," and "a white substance." This final consideration is admittedly ambiguous. On one hand, the usage may reflect the convenience of begging the central question of whether the powder in this case constituted a single substance. On the other, it may reveal an insight creditable to the unique human ability to perceive the natural grouping of objects. That is, the parties' questioning and the witness's testimony suggest that, in the state in which the powder was found, the "white, chunky" powder and the "black chunks" were less discrete than defendant now contends.
¶ 20 Under these circumstances, a reasonable trier of fact could have found the chunky powder in the gift bag was a single substance containing methamphetamine. The powder, even if the result of commingling methamphetamine and nonmethamphetamine chemical compounds, constituted a single substance as it was found, the result of an illegal methamphetamine manufacture in which defendant participated, combined in a single container. The State was not required to sort out any possibly distinct elements that accounted for the variegated coloring of the powder, from which defendant asks us to infer the presence of more than one substance; rather, the substance was permissibly weighed and tested in the state in which it was found. That a sample of the substance tested positive for methamphetamine was sufficient to prove the entire 391.1-gram specimen was a "substance containing methamphetamine" within the meaning of the statute.

¶ 21 III. CONCLUSION
¶ 22 For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment as costs of this appeal.
¶ 23 Affirmed.
Justices TURNER and STEIGMANN concurred in the judgment and opinion.