NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200123-U

NO. 4-20-0123

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

Rule 23 filed October 18, 2021

Modified upon denial of
Rehearing November 15, 2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| JAMES HUNT, | ) | No. 18CF1498 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The State's evidence was insufficient to prove defendant committed the offense of
obstructing justice but sufficient to prove defendant possessed more than 2000
grams of cannabis.  The reversal of defendant's obstructing justice conviction
does not warrant a new sentencing hearing on defendant's other convictions.

¶ 2       After a December 2019 trial, a jury found defendant, James Hunt, guilty of

unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(A) (West 2018)),

unlawful possession of cannabis (720 ILCS 550/4(f) (West 2018)), and obstructing justice (720

ILCS 5/31-4(a) (West 2018)).  After a January 2020 hearing, the Champaign County circuit court

sentenced defendant to prison terms of 12 years for unlawful possession of a controlled

substance, 7 years for unlawful possession of cannabis, and 3 years for obstructing justice.

Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 3       Defendant appeals, contending (1) the State's evidence was insufficient to prove

him guilty beyond a reasonable doubt of obstructing justice; (2) the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of possessing more than 2000 grams of cannabis; and (3) he is entitled to remand for resentencing. We reverse in part and affirm in part.

¶ 4                                        I. BACKGROUND

¶ 5            On the morning of October 25, 2018, the police executed a search warrant for apartment 301 at 2409 North Neil Street in Champaign, Illinois. Defendant was present in the apartment when the police entered. Afterwards, the State charged defendant with one count of unlawful possession with the intent to deliver 15 grams or more but less than 100 grams of a substance containing cocaine (720 ILCS 570/401(a)(2)(A) (West 2018)) (count I), one count of unlawful possession of cannabis with the intent to deliver 2000 or more grams but not more than 5000 grams of a substance containing cannabis (720 ILCS 550/5(f) (West 2018)) (count II), one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)) (count III), and one count of obstructing justice (720 ILCS 5/31-4(a) (West 2018)) (count IV).

¶ 6            In December 2019, the circuit court held a jury trial on the four charges against defendant. At the beginning of the trial, the State stated it would request lesser-included offense instructions for counts I and II. The State presented the testimony of (1) Officer David Monahan; (2) Officer Jeff Creel; (3) Officer Jim Kerner; (4) Officer Jordan Hagemann; (5) Lieutenant Matthew Ballinger; (6) Officer Nick Krippel; (7) Mark E. Huckstep, an evidence technician; (8) Kristin Stiefvater, an Illinois State Police drug chemist; and (9) Detective Marshall Henry. The State also presented numerous exhibits, including photographs of contraband laying on the ground (State's exhibit Nos. B2 through B11), photographs of gummy candies in the southwest bedroom of apartment 301 (State's exhibit Nos. C8 through C12),

cocaine (State's exhibit No. 1), cannabis (State's exhibit Nos. 2 and 7), and cannabis edibles (State's exhibit Nos. 3 and 6). Defendant testified on his own behalf. The evidence relevant to the issues on appeal follows.

¶ 7 Officer Monahan testified he was part of the special weapons and tactics team that executed the search warrant on apartment 301. He was part of the team that served the search warrant and secured the residence. Apartment 301 had several bedrooms, one of which Officer Monahan identified as the southwest bedroom. The southwest bedroom had two windows side by side. One window was closed, and the other window was open. The window screen of the open window had a giant hole in it. After the residence was secured, Officer Monahan went outside to photograph and collect evidence. There, he observed contraband on the grassy area below the southwest window. Officer Monahan identified State's exhibit Nos. B2 through B11 as the photographs he took of contraband on the ground under the open window of the southwest bedroom. As to the items found on the grassy area, he identified State's exhibit No. 2 as a brown paper bag containing a green leafy substance and State's exhibit No. 3 as miscellaneous bags of edible candy containing tetrahydrocannabinol (THC). Officer Monahan returned inside the apartment to photograph and collect evidence. He identified State's exhibit Nos. C8 through C12 as the photographs he took of edible candies containing THC in the southwest bedroom. The evidence Officer Monahan collected in the southwest bedroom included State's exhibit No. 6, which he described as miscellaneous bags of edible candy containing THC, and State's exhibit No. 7, which he identified as a vacuum-sealed bag containing a green leafy substance.

¶ 8 Officer Creel testified he too was part of the police team executing the search warrant for apartment 301. After the door to the apartment was breached, Officer Creel was the first officer to enter the apartment, and he asked a woman with a child to exit the apartment. No

other person was in his view.  Officer Creel then took a position in the hallway and continued to announce that, if anyone else was present in the residence, they needed to come out with their hands up.  A black male with no shirt, whom Officer Creel identified as defendant, exited the southwest bedroom.  Officer Creel estimated "probably two minutes" elapsed between the time of the first knock and when defendant exited the southwest bedroom.  No one else exited the southwest bedroom.

¶ 9        Officer Hagemann testified his role in the execution of the search warrant was sniper reserve position.  He was in an armored vehicle parked 30 yards south of the targeted apartment building.  Using a magnified optic, Officer Hagemann observed the outside of the apartment.  Around the same time an officer announced over radio they were going to breach the door, Officer Hagemann observed an arm poke through the window screen of an open window in the apartment.  He estimated the time before he first heard the knock and the police announce their presence over the radio until he saw the arm come out the window was less than ten seconds.  The arm dropped a plastic baggy with a white substance in it, and the arm was then pulled back inside the window.  Next, the arm dropped a black plastic bag out of the window.  After that, the arm retreated inside the apartment, and he did not see it again.  Officer Hagemann maintained visual observation of the items that had been thrown from the window through his peripheral vision.  Two other officers approached and "got eyes" on the bags on the ground and made sure nobody else walked away with the items.  Officer Hagemann testified no one moved or manipulated the items on the ground from the time he saw the items being thrown to when the items were collected as evidence.

¶ 10        Lieutenant Ballinger testified his role was on the perimeter and he could see the backside of the apartment.  He too observed bags coming from the window on the southside of

the apartment. Lieutenant Ballinger could not recall the number of bags but noted one large black bag and several smaller plastic clear bags. After he saw the bags come out the window, Lieutenant Ballinger assigned Detective Seth Herrig to "post up" on the items so they did not "walk away" and a proper chain of custody could be maintained.

¶ 11 Officer Krippel testified he was part of a surveillance unit southwest of the apartment building. Over the radio, he heard units stating stuff was being thrown out a window and another unit indicating they had made entry. Once things were secure, Officer Krippel's unit approached from the southwest and he could see "bags laying down on the ground from the window that was the apartment."

¶ 12 The court permitted Stiefvater to testify as an expert in the field of drug chemistry analysis. She identified State's exhibit No. 1 as a bag that contained an off-white chunky substance, which weighed 27.5 grams. Stiefvater opined the substance contained cocaine. Additionally, she identified State's exhibit Nos. 2 and 7 as bags containing plant material and State's exhibit Nos. 3 and 6 as packets containing gummy candy. Stiefvater weighed the material in each exhibit. As to the plant material, State's exhibit No. 2 had a net weight of 171.8 grams, and State's exhibit No. 7 had a net weight of 439.7 grams. Stiefvater only analyzed five of the candy packets in State's exhibit No. 3, and the weight of the material in those five packets was 505.6 grams. State's exhibit No. 6 contained 14 packets of candy and had a net weight of 1100.7 grams. Stiefvater performed tests on the plant material and opined the plant material in State's exhibit Nos. 2 and 7 was cannabis. As to the gummy candy, Stiefvater explained she took one sample from each separate packet of gummy candy and analyzed it. Stiefvater opined all the gummy candies in State's exhibit Nos. 3 and 6 that had a sample tested contained cannabis. Additionally, Stiefvater testified the total weight of all the materials she found to

contain cannabis was 2217.8 grams.

¶ 13 After hearing the parties' arguments, the jury found defendant guilty of obstructing justice and the lesser-included offenses of possession of a controlled substance containing cocaine and possession of cannabis. The jury found defendant not guilty of possession of a weapon by a felon.

¶ 14 On January 31, 2020, the circuit court held the sentencing hearing. In sentencing defendant, the court noted defendant's extensive criminal history including convictions for unlawful delivery of a controlled substance and possession with the intent to deliver a controlled substance. Moreover, it noted defendant was visiting his child at the time of the search warrant and had the child in the room where a large amount of the gummy cannabis candies were found. The court also found a factor in aggravation was defendant leaving the courthouse when he learned the verdict was in. Additionally, the court stated the following:

> "I would note the defense's actions are in aggravation because he was pitching those packages out the window as police were trying to serve the court-ordered search warrant. That's not the actions of someone who's remorseful or an individual caught up in the throes of substance abuse who simply wanted help. He was trying to evade responsibility. In doing so, then he jeopardized any child who came along in that common grassy area of the apartment building who would have stumbled on those packages. And, again, they're very attractive, very inviting to any child, and he was heedless of any danger that was presented to anyone who would find those packages, and it's almost designed to be appealing to a child."

The court stated it was sentencing defendant to 12 years' imprisonment for possession of a

controlled substance, 7 years' imprisonment for possession of cannabis to run concurrently, and 3 years' imprisonment for obstructing justice to run consecutively. Defense counsel asked the court to clarify the sentences since the court mentioned both concurrent and consecutive sentences. The court stated, "If I misspoke, it's consecutive." The court then repeated several times it was consecutive sentences. We note the written sentencing judgment lists the wrong offenses for counts I and II and states the sentences are concurrent. Defendant filed a motion to reconsider his sentence, which the court denied after a February 24, 2020, hearing.

¶ 15 On February 24, 2020, defendant filed a timely notice of appeal listing the appealed judgment as his sentence and the denial of his motion to reconsider his sentence. On March 5, 2020, defendant filed a timely amended notice of appeal under Illinois Supreme Court Rules 606(d) (eff. July 1, 2017) and 303(b)(5) (eff. July 1, 2017) that listed the appealed judgment as defendant's conviction and sentence as well as the denial of his motion to reconsider. Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 16 II. ANALYSIS

¶ 17 A. Sufficiency of the Evidence

¶ 18 Defendant contends the State's evidence was insufficient to prove beyond a reasonable doubt he committed the offense of obstructing justice and possession of more than 2000 grams of cannabis. The State concedes the evidence at defendant's trial failed to establish defendant committed obstructing justice but asserts the State did present sufficient evidence defendant possessed more than 2000 grams of cannabis. Our supreme court has set forth the following standard of review for insufficiency of the evidence claims:

"When considering a challenge to the sufficiency of the evidence, a

reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements beyond a reasonable doubt. [Citation.] [I]t is not the function of this court to retry the defendant. [Citation.] All reasonable inferences from the evidence must be drawn in favor of the prosecution. [I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. [Citation.] We will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. [Citation.]" (Internal quotation marks omitted.) *People v. Newton*, 2018 IL 122958, ¶ 24, 120 N.E.3d 948.

¶ 19                                    1. *Obstructing Justice*

¶ 20        The offense of obstructing justice is contained in section 31-4 of the Criminal Code of 2012 (Criminal Code), which provides in pertinent part the following:

"(a) A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly commits any of the following acts:

(1) Destroys, alters, conceals, or disguises physical evidence, plants false evidence, [or] furnishes false information[.]" 720 ILCS 5/31-4(a)(1) (West 2018).

Our supreme court has long held section 31-4(a) of the Criminal Code requires a showing of material impediment to the administration of justice. *People v. Casler*, 2020 IL 125117, ¶ 33. In

- 8 -

other words, the person's actions must *actually* interfere with the administration of justice. *People v. Comage*, 241 Ill. 2d 139, 149, 946 N.E.2d 313, 319 (2011). Defendant contends the State failed to prove defendant's actions materially impeded the police's investigation.

¶ 21 In *Comage*, 241 Ill. 2d at 150, 946 N.E.2d at 319, our supreme court found the defendant did not materially impede the police officers' investigation. There, the defendant threw a crack pipe and push rod over a fence, and the items landed about 10 feet away. *Comage*, 241 Ill. 2d at 150, 946 N.E.2d at 319. The police officers saw the defendant throw the items and were able to walk around the fence and recover them within 20 seconds. *Comage*, 241 Ill. 2d at 150, 946 N.E.2d at 319. The fact the items were briefly out of the police officers' sight did not materially impede the officers. *Comage*, 241 Ill. 2d at 150, 946 N.E.2d at 319.

¶ 22 The facts of this case are like those in *Comage*. Here, the trial evidence showed defendant, who was in a third-floor apartment that was the subject of a search warrant, threw multiple bags containing contraband out the window onto the grassy area below when the police announced their presence. At that time, the police had the back of the apartment building under surveillance. Officers saw the bags exit the window and kept the bags under surveillance until the bags could be recovered. Thus, we agree with defendant and the State the trial evidence did not show defendant materially impeded the police's investigation. As such, we reverse defendant's conviction and sentence for obstructing justice.

¶ 23 2. *Possession of More Than 2000 Grams of Cannabis*

¶ 24 Under section 4 of the Cannabis Control Act, "[i]t is unlawful for any person knowingly to possess cannabis." 720 ILCS 550/4 (West 2018). A person who possesses more than 2000 grams but not more than 5000 grams of a substance containing cannabis is guilty of a Class 2 felony. 720 ILCS 550/4(f) (West 2018). When the State has charged a defendant "with

possession of a specific amount of an illegal drug with intent to deliver and there is a lesser included offense of possession of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt." *People v. Jones*, 174 Ill. 2d 427, 428-29, 675 N.E.2d 99, 100 (1996).

¶ 25    In this case, the State presented evidence defendant possessed two packages containing plant material (State's exhibit Nos. 2 and 7) and two packages containing smaller packets of gummy candies (State's exhibit Nos. 3 and 6). Stiefvater opined the plant material in State's exhibit Nos. 2 and 7 was cannabis. The total weight of the plant material was 611.5 grams. As to the gummy candies, Stiefvater weighed the gummy candies in 19 of the packets contained in State's exhibit Nos. 3 and 6, and the total weight was 1606.3 grams. Stiefvater then tested one gummy candy per packet of the 19 packets and found each sample gummy candy contained cannabis. Stiefvater testified the total weight for all the plant material in State's exhibit Nos. 2 and 7 and the gummy candies in the 19 packets in State's exhibits 3 and 6 was 2217.8 grams. On appeal, defendant contends the State did not prove all the gummy candies in the 19 packets contained cannabis because Stiefvater did not testify the gummy candies in each packet were similar to one another and she only tested one gummy candy in each packet. Thus, he argues the State failed to prove he possessed more than 2000 grams of cannabis. The State disagrees and asserts its evidence was sufficient to prove all the gummy candies contained cannabis.

¶ 26    Generally, a chemist does not need to test every sample seized to render an opinion as to the makeup of the substance of the whole. *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 100. Random testing is allowed "when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as

- 10 -

those that are conclusively tested." *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 100. When the seized samples are not sufficiently homogenous, a portion from each container or sample must be tested to determine the contents of each container or sample. *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 101. Defendant contends the State failed to present evidence the gummy candies were homogenous to allow an inference the untested candies also contained cannabis.

¶ 27     In support of his argument, defendant cites *People v. Adair*, 406 Ill. App. 3d 133, 139, 940 N.E.2d 292, 298 (2010), where the reviewing court concluded, based on the visible appearance of the pills, no credible contention could be made the pills were sufficiently homogeneous to permit random sampling. There, "the pills in the bag seized from the defendant were not identically marked, stamped, or even of the same color." *Adair*, 406 Ill. App. 3d at 139, 940 N.E.2d at 298. In fact, "the 21 pills and 3 pill fragments were of five different colors: three yellow pills; four lavender pills; eight orange pills; six red pills; and two green pill chunks." *Adair*, 406 Ill. App. 3d at 139, 940 N.E.2d at 298. Given the five colors of pills, "at the very least each color grouping of pills had to be treated as a separate sample and tested independently for the presence of each controlled substance." *Adair*, 406 Ill. App. 3d at 140, 940 N.E.2d at 299.

¶ 28     In *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101, our supreme court reduced the defendant's Class 1 felony to a Class 2 felony. There, the defendant possessed five packets, of which each contained a white rocky substance. *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 101. While the chemist examined all the packets and weighed them individually, the chemist only performed a chemical analysis on two of the packets. *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 101. Those two packets contained cocaine and weighed a combined total of 0.59 grams. *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 101. The supreme court explained the five packets containing

loose substances could not be equated with identically marked and stamped tablets, pills, or capsules. *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101. It noted whether the untested packets may have contained cocaine or mere look-alike substances was pure conjecture. *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101. The court concluded the chemist failed to test a sufficient number of packets to prove beyond a reasonable doubt the defendant possessed one gram or more of cocaine. *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101.

¶ 29 The State contends the facts of this case are more similar to those in *People v. Tilley*, 2011 IL App (4th) 100105, ¶ 20, 958 N.E.2d 1123, where this court found the State's evidence was sufficient to prove the entire 391.1 grams contained in a single gift bag was a single substance containing methamphetamine. There, the defendant argued the seized powder consisted of multiple substances, within the meaning of the statute. *Tilley*, 2011 IL App (4th) 100105, ¶ 14. Specifically, she contended "the State was required to test and weigh separately the 'white, chunky' powder and the 'black chunks' found in the gift bag." *Tilley*, 2011 IL App (4th) 100105, ¶ 14. In reaching our holding, this court noted both the powder's apparent white and black components remained blended together when the powder was found and our supreme court's prior statement a byproduct of methamphetamine production, such as the seized powder, could be considered a "substance" within the meaning of the statute. *Tilley*, 2011 IL App (4th) 100105, ¶ 16. We also emphasized the powder was found in a single container. *Tilley*, 2011 IL App (4th) 100105, ¶ 17. Moreover, even assuming the seized powder could have been sorted into its distinct chemical components, we pointed out "the State is generally entitled to establish the mass of a controlled substance without altering its condition or removing possibly identifiable, distinct, licit materials." *Tilley*, 2011 IL App (4th) 100105, ¶ 18.

¶ 30 Here, Stiefvater, the chemist in this case, tested one gummy candy from each

seized packet for cannabis. Since gummy candies are not pills with identical markings or stamps, we find *Jones* controls. Therefore, the gummy candies in each packet had to be sufficiently homogenous for Stiefvater's testing of only one gummy candy in each packet to result in an inference beyond a reasonable doubt the untested gummy candies in the same packet contained the same substance as the one conclusively tested.

¶ 31 Defendant argues the State failed to present evidence the gummy candies in each packet were homogenous and notes Stiefvater did not testify the gummy candies in each packet were similar in appearance. However, defendant admits, if Stiefvater would have testified the gummy candies were similar in appearance to one another, her expert opinion would have probably sufficed to prove beyond a reasonable doubt the untested candies contained cannabis. Regardless, defendant's argument fails to recognize the State's other evidence. The State presented the packets of gummy candies at trial as well as photographs of the packets of gummy candies that constitute State's exhibit Nos. 3 and 6. On appeal, only the photographs of the packets are before this court. Defendant, as the appellant, had the burden to present a sufficiently complete record of the trial proceedings to support his claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391, 459 N.E.2d 958, 959 (1984). As such, we resolve any doubts which arise from the incompleteness of the record against defendant. See *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959. Moreover, our review of the photographs indicates the gummy candies in each individual packet were similar in appearance. Defendant has not identified any trial evidence before us that suggests the gummy candies in each packet were not similar in appearance. Thus, in viewing the evidence in the light most favorable to the State, we find the inference for untested samples applies and the State's evidence was sufficient to find defendant guilty beyond a reasonable doubt of possessing more than 2000 grams of cannabis.

¶ 32                                    B. Sentence

¶ 33        Last, defendant argues he is entitled to remand for resentencing because he has

shown one of his convictions should be vacated and another conviction reduced to a lesser class

felony and the circuit court considered all three convictions in imposing concurrent sentences.

However, this court has only reversed defendant's conviction and three-year sentence for

obstructing justice and, thus, will disregard defendant's arguments related to the change in class

of his possession of cannabis conviction.  The State contends defendant is not entitled to remand

for resentencing.  We agree.

¶ 34        Our supreme court has noted the standard for determining when to remand for

resentencing when not all the sentences were vacated may be the inability to determine

affirmatively from the record whether the sentence was influenced by the consideration of

improper factors or whether the defendant must come forward with convincing evidence the

judge or jury was so influenced.  *People v. Alejos*, 97 Ill. 2d 502, 511, 455 N.E.2d 48, 53 (1983).

In a later case, the supreme court declined to remand where the circuit court sentenced the

defendant separately on each conviction and the record did not otherwise show the circuit court

considered the vacated convictions in imposing sentence on the remaining conviction.  *People v.*

*Maggette*, 195 Ill. 2d 336, 354-55, 747 N.E.2d 339, 350 (2001).

¶ 35        Here, defendant argues the circuit court considered the obstructing justice

conviction in imposing his 12-year sentence for possession of a controlled substance.  He points

out the court noted defendant's action of throwing packages of contraband out the apartment

window and found it aggravating.  After the court noted the packages were thrown, it found

defendant's actions neither showed remorse nor a person caught up in the throes of substance

abuse simply wanting help.  This court vacated defendant's obstructing justice conviction

- 14 -

because the trial evidence did not show defendant materially impeded the police's investigation. We did not find defendant was not the individual who threw the contraband out the window. Moreover, the circuit court did not state it found defendant's actions were aggravating because he was interfering with a police investigation or concealing evidence. As the State notes, it was proper to consider defendant's actions at the time of his arrest in imposing his sentence for possession of a controlled substance. Additionally, defendant emphasizes the fact the circuit court imposed concurrent sentences. However, a reading of the entire transcript of the sentencing hearing indicates the circuit court intended to impose consecutive sentences when sentencing defendant to a 12-year sentence for possession of a controlled substance. What the circuit court later did regarding consecutive/concurrent sentencing is unclear from the appellate record due largely to the fact a court reporter was not present when the circuit court addressed the fact the unlawful possession of cannabis count was also subject to Class X sentencing. Regardless, we do not find the circuit court considered an improper factor in imposing defendant's 12-year sentence for possession of the controlled substance containing cocaine and thus decline to remand the cause for resentencing.

¶ 36                                III. CONCLUSION

¶ 37          For the reasons stated, we reverse defendant's conviction and sentence for obstructing justice and affirm the Champaign County circuit court's judgment in all other respects.

¶ 38          Affirmed in part and reversed in part.